

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Landfill Technologies of. Arecibo, Corp.<br>     Peticionario<br><br>          v.<br><br>Gobierno Municipal de Lares, su Alcalde Hon. Roberto Pagán Centeno, Margarita Guzmán o Directora de Finanzas del Municipio de Lares<br>     Recurridos | Certiorari<br><br>2013 TSPR 14<br><br>187 DPR ____ |

Número del Caso: CC-2012-176


Fecha: 12 de febrero de 2013


Tribunal de Apelaciones:

      Región Judicial de Arecibo

Abogado de la Parte Peticionaria:

      Lcdo. Javier Juaquín Vázquez Bravo

Abogado de la Parte Recurrida:

      Lcdo. William Marini Román


Materia: Contratos – Contrato para la disposición de desperdicios sólidos; excepciones bajo el Art 8.004(b) de la Ley de Municipios Autónomos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Landfill Technologies of Arecibo, Corp.

      Peticionario

         v.

                                  CC-2012-0176

Gobierno Municipal de Lares, su Alcalde Hon. Roberto Pagán Centeno, Margarita Guzmán o Directora de Finanzas del Municipio de Lares

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 12 de febrero de 2013.

La empresa Landfill Technologies Corp. comparece ante nos para que revoquemos una determinación del Tribunal de Apelaciones que liberó al Municipio de Lares de pagarle una deuda ascendente a $300,256.50 por servicios prestados. Por el contrario, el foro apelativo intermedio le ordenó reembolsar $390,043.63 al Municipio. Con su sentencia, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia.

Por entender que la relación contractual entre el Municipio de Lares y Landfill Technologies Corp. es una de servicios cobijada bajo la excepción que dispone el Art. 8.004(b) de la Ley de Municipios Autónomos, Ley

Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4354(b), revocamos.

I

El Municipio de Lares y Landfill Technologies Corp. (Landfill) firmaron un contrato para la disposición de desperdicios sólidos el 2 de julio de 2004. El acuerdo, que firmó el entonces alcalde Hon. Luis A. Oliver Canabal meses antes de que finalizara su administración municipal, se tituló "Contrato para la Disposición de Desperdicios Sólidos No Peligrosos". El contrato establecía que el Municipio podía depositar los desperdicios domésticos aceptables que acarrearan sus camiones en el Vertedero de Relleno Sanitario de Arecibo, propiedad de Landfill. La empresa cobraría una tarifa de $31 por cada tonelada depositada.

La cláusula diez del contrato detalló que su vigencia abarcaba desde el 1 de julio de 2004 hasta el 30 de junio de 2005. A partir de ese momento, se renovaría semestralmente "mediante la correspondiente separación de fondos debidamente registrada". Paso seguido, la cláusula once dispuso:

> El Municipio certifica que ha separado en su presupuesto una partida de cincuenta y cinco mil cuatrocientos treinta y ocho dólares con 58 centavos ($55,438.58) para estos propósitos bajo la Partida de Disposición de Desperdicios Sólidos, cuenta número 01-10-06-94-73. El Municipio se compromete además a transferir a esta cuenta cualquier cantidad de dinero adicional necesaria para el pago de este **servicio**, que pudiera venir obligado a pagar, pero que no obligó en su presupuesto, según las leyes y reglamentos que regulan las operaciones municipales. (Énfasis nuestro.)

Además, el Municipio se comprometió a separar, registrar y procesar los fondos para cumplir con el contrato correspondiente a ese año, y a presentar la evidencia de esa gestión durante los años subsiguientes, si las partes decidían renovarlo. El contrato se registró en el Registro de Contratos del Municipio y en la Oficina del Contralor.

Luego de gestiones extrajudiciales de cobro que resultaron infructuosas, el 21 de mayo de 2009 Landfill demandó al Municipio en cobro de dinero. Exigió el pago de $300,256.50 correspondientes a servicios prestados entre agosto de 2004 y junio de 2005, mientras estuvo vigente el contrato.

El Municipio presentó una reconvención en la que reclamó el reembolso de $390,043.63 que supuestamente pagó en exceso. Basó su reclamo en una auditoría de la Oficina del Contralor de Puerto Rico. El informe del Contralor M-03-51, de 30 de mayo de 2003 recomendó, entre otras cosas, recobrar un dinero que se pagó por obligaciones incurridas ilegalmente porque se cargaron a presupuestos de años posteriores. Lo recomendó, además, porque no se registraron esas obligaciones en los libros del Municipio. El informe no detalla los contratistas a quienes se les pagó el dinero que debía recobrarse, más allá de señalar que el monto totalizaba $713,142. La sentencia del Tribunal de Primera Instancia aclara que, del monto total del señalamiento del Contralor, $390,043.63 corresponden a facturas que el Municipio pagó a

Landfill de diciembre de 1999 a junio de 2000 y de febrero a junio de 2001.

El Tribunal de Primera Instancia declaró con lugar la demanda de Landfill, por lo que ordenó al Municipio a pagarle $300,256.50. Concluyó que la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 y ss, concede flexibilidad a los contratos sobre la disposición de desperdicios, por su importancia para la salud pública.

Además, declaró no ha lugar la reconvención del Municipio. Así descartó que Landfill tuviera que reembolsar $390,043.63. Entendió que la partida que reclamó el Municipio era incobrable porque los servicios contratados y prestados se hicieron acorde con las disposiciones de ley. Por último, el Tribunal de Primera Instancia señaló que la falta en hacer constar en el Registro de Contratos del Municipio la separación de las partidas requeridas para costear el contrato, según señaló el Contralor, recaía en la administración municipal, no en el contratista.

De esa determinación el Municipio acudió al Tribunal de Apelaciones. Solicitó que se revocara la sentencia de 14 de abril de 2011, se declarara ilegal el contrato con Landfill y se le eximiera del pago de $3,000 de honorarios que se le impuso. El foro apelativo intermedio declaró ilegal el contrato. Reconoció que el servicio de disposición de desperdicios sólidos está excluido de varios de los requisitos legales para la contratación con municipios, pero que el contrato aquí en controversia atenta contra el interés público. Además, cuestionó la constitucionalidad de varios de

los artículos de la Ley de Municipios Autónomos. También ordenó a Landfill el reembolso de los $390,043.64 que el Municipio reclamó en la reconvención.

De la sentencia del Tribunal de Apelaciones, de 31 de enero de 2012, Landfill recurre ante nos. Reitera en su petición de certiorari que la Ley de Municipios Autónomos, supra, establece que los contratos de disposición de desperdicios sólidos son de servicios, por lo que están exentos por ley del impedimento de pagarse con presupuestos futuros.

En reconsideración, expedimos el auto el 25 de mayo de 2012. Con la comparecencia de ambas partes, resolvemos.

II

La validez de los contratos con los municipios tiene que determinarse a la luz de las disposiciones pertinentes de la Ley de Municipios Autónomos, y no según la teoría de las obligaciones y contratos del Código Civil, que tan solo aplica supletoriamente. ALCO Corp. v. Mun. de Toa Alta, 183 D.P.R. 530, 537 (2011); Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 854-855 (2007); Mun. de Ponce v. A.C. et al., 153 D.P.R. 1, 31 (2000).

Ahora bien, a pesar de que la Ley de Municipios Autónomos, supra, reconoce autonomía a los municipios, establece unas restricciones sobre el desembolso de fondos públicos. En lo pertinente a este caso, el Art. 8.004, 21 L.P.R.A. sec. 4354, señala que:

> Las obligaciones y desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y

equipo, reclamaciones o cualquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas.

(a) Los créditos autorizados para las atenciones de un año fiscal específico serán aplicados exclusivamente al pago de gastos legítimamente originados e incurridos durante el respectivo año, o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año.

(b) No podrá gastarse u obligarse en año fiscal cantidad alguna que exceda de las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, al municipio en ningún contrato o negociación para pago futuro de cantidades que excedan a las asignaciones y los fondos. **Estarán excluidos de lo dispuesto en este inciso los contratos de arrendamiento de propiedad mueble e inmueble y de servicios**… (Énfasis nuestro.)

De esta forma, un municipio, **por lo general**, no puede pactar el pago futuro de cantidades que excedan la asignación presupuestaria de ese año. Los fondos correspondientes a un año fiscal no pueden utilizarse para el pago de obligaciones contraídas en años previos o posteriores. ALCO Corp. v. Mun. de Toa Alta, supra, pág. 539. Sin embargo, esta regla general encuentra su excepción en los contratos de arrendamiento de propiedad mueble e inmueble y **de servicios**, según dispone la Ley de Municipios Autónomos, Art. 8.004(b), supra.

Ahora bien, ¿puede un Municipio obligarse al pago futuro de **cantidades que excedan la asignación de un contrato en particular**? La respuesta, de ordinario, es en la negativa. En cuanto a ello, el Art. 8.004(b) de la Ley de Municipios Autónomos, ante, expresamente prohíbe que los municipios se comprometan, mediante contrato u otro tipo de negociación, al pago futuro de obligaciones que excedan las asignaciones y a los fondos.

No obstante, esta disposición **exceptúa de la prohibición a los contratos de arrendamiento de propiedad mueble e inmueble y a los contratos de servicios.**

Johnson & Johnson v. Mun. de San Juan, supra, págs. 857-858. (Énfasis nuestro y en original.)

Además, el Art. 8.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4366, requiere que todos los municipios mantengan "un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico" dentro de los 15 días después de haberse otorgado. De igual forma requiere la Ley Orgánica de la Oficina del Contralor, Ley Núm. 18 de 30 de octubre de 1975, según enmendada. 2 L.P.R.A. sec. 71 y ss. Al respecto, hemos reiterado que

> [e]ste precepto, también de sana política administrativa pública, refleja el interés legislativo de evitar pagos y reclamaciones fraudulentas o ilegales, al crear un mecanismo de cotejo para perpetuar circunstancial y cronológicamente dichos contratos, y requiere que: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con miras a prima facie establecer su existencia; (3) se remita copia a la Oficina del Contralor como medio de una *doble* constancia de su otorgamientos, términos y existencias, y (4) se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. (Énfasis en original.)

> Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988). Véanse, además, ALCO Corp. v. Mun. de Toa Alta, supra, pág. 537; Johnson & Johnson v. Mun. de San Juan, supra, págs. 852-853.

Como vemos, el registro y remisión de los contratos a la Oficina del Contralor es un mecanismo de cotejo para evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento en la administración pública. Lugo v. Municipio de Guayama, 163 D.P.R. 208, 220 (2004). El

incumplimiento con el **mantenimiento del registro** y la presentación del contrato en la Oficina del Contralor no acarrea la nulidad del negocio jurídico, aunque no podrán exigirse las prestaciones hasta que se haya cumplido con ese requisito. Art. 1, Ley Núm. 18 de 30 de octubre de 1975, Parte 2, p. 901, 2 L.P.R.A. sec. 97; Colón Colón v. Mun de Arecibo, 170 D.P.R. 718, 727 (2007).

Por otro lado, la enmienda que introdujo la Ley Núm. 258-2004 a la Ley de Municipios Autónomos, supra, en su Art. 2.005, confiere a los municipios la facultad de determinar cómo se dispondrá de los desperdicios sólidos. Les autoriza para crear y operar programas y servicios para su manejo, o para contratar con personas naturales o jurídicas que se encarguen de esa labor. 21 L.P.R.A. sec. 4055. Entre sus definiciones, el inciso (a)(2) señala que la disposición de desperdicios sólidos es un **servicio** que se define de la siguiente forma:

> *Servicio de disposición de desperdicios sólidos.‒* Significara la disposición de desperdicios sólidos, por cualquier entidad pública o privada, incluyendo cualquier otro municipio o la Autoridad para el Manejo de Desperdicios Sólidos, mediante **la operación de plantas o instalaciones para la disposición** de tales desperdicios.

El Art. 2.006, inciso (k), reitera la facultad de los municipios para contratar el servicio de manejo de desperdicios sólidos. Destaca que este tipo de contrato estará excluido del requisito de subasta pública. Además, específicamente indica que "podrán otorgarse por cualquier término de duración". 21 L.P.R.A. sec. 4056(k). El inciso (l) admitió la retroactividad de las enmiendas que introdujo

la Ley Núm. 258, supra, siempre y cuando no menoscaben las obligaciones contractuales.

### III

A. Antes de adentrarnos en el análisis de la Ley de Municipios Autónomos, supra, y el contrato objeto de la demanda, es pertinente una breve discusión sobre el Art. VI, Sec. 10 de la Constitución de Puerto Rico, que el Tribunal de Apelaciones trajo a discusión como parte de su análisis. El foro apelativo intermedio concluyó que la cláusula once del contrato violó el Art. VI, Sec. 10, de la Constitución de Puerto Rico. Const. E.L.A., L.P.R.A., Tomo 1. Este señala que:

> **Ninguna ley** concederá compensación adicional a un funcionario, empleado, agente o contratista por servicios al gobierno, después que los servicios hayan sido prestados o después que se haya formalizado el contrato. Ninguna ley prorrogará el término de un funcionario público ni disminuirá su sueldo o emolumentos después de su elección o nombramiento. Ninguna persona podrá recibir sueldo por más de un cargo o empleo en el gobierno de Puerto Rico. (Énfasis nuestro.)
>
> Art. VI, Sec. 10, supra.

Según el foro apelativo intermedio, la cláusula once del contrato violenta esta disposición constitucional en la parte que compromete al Municipio a transferir "cualquier cantidad de dinero adicional necesaria para el pago de este servicio" a la cuenta asignada para el pago de desperdicios sólidos. No coincidimos con su análisis. Esta cláusula constitucional no es aplicable a los hechos de este caso.

El Tribunal de Apelaciones entendió que este contrato viola la cláusula constitucional que impide compensaciones

adicionales por servicios pactados o trabajados porque permite que se hagan pagos adicionales a la cantidad inicialmente separada para pagarlo. Sin embargo, este no es el caso. La cláusula constitucional pretende evitar que se hagan pagos adicionales por servicios ya pactados o realizados. No impide que se pacten servicios adicionales a los ya contratados aunque estén relacionados. A tales efectos, véase la discusión plasmada en el Diario de Sesiones de la Convención Constituyente, 1961, T. 3, págs. 1973-1986. En esa discusión, algunos de los constituyentes expresaron preocupación porque entendían que el lenguaje del Art. VI, Sec. 10 de la Constitución de Puerto Rico, supra, podía interpretarse como un impedimento a la flexibilidad necesaria para hacer cambios de órdenes legítimos a contratos o extensiones a obras ya comenzadas. Al respecto, el Sr. Luis Muñoz Rivera expresó:

> Me parece que aquí se ha exagerado, se ha ido más allá de lo que dice aquí. Se ha exagerado la interpretación de lo que dice aquí: el aprobar compensación adicional lo que quiere decir es, que **cuando un individuo ha contratado un servicio o una obra, por ese mismo contrato no puede recibir una compensación adicional**. Pero esto no quiere decir que si ese individuo, que a ese individuo, se le prohíba en forma alguna que **contrate un nuevo servicio, aunque sea relacionado con el anterior** o [que pueda] extender la obra que había comenzado… Si hubiere algún peligro, de acuerdo con la enmienda del compañero, de que se fuera a entorpecer, se fuera a privar a los administradores, bien sea de los municipios o de los distintos departamentos del gobierno respecto de los nuevos contratos; nuevos contratos por la misma obra, no con el mismo alcance del contrato anterior, pero distinto y diferente… Eso no es compensación adicional en ningún sitio. Por eso no hay peligro en la adopción de la enmienda del compañero. (Énfasis nuestro).

Diario de Sesiones de la Convención Constituyente, íd., pág. 1979.

El Art. IV, Sec. 10, tampoco impide que se pague lo acordado por los servicios a prestarse como parte del contrato pactado, aunque exceda la cantidad inicialmente separada para ello en el presupuesto municipal. Eso es lo que sucede en el caso ante nos.

El Art. 8.004(b) de la Ley de Municipios Autónomos, supra, establece una excepción expresa para los contratos de servicios y de arrendamiento de muebles e inmuebles en lo que respecta a la limitación de comprometerse al pago futuro de partidas que excedan las presupuestadas. La cláusula once del contrato objeto de la demanda de Landfill se cobija en esta disposición.

Aquí se pactó una tarifa de $31 por cada tonelada de desperdicios sólidos no peligrosos que el Municipio acarreara al Vertedero de Relleno Sanitario de Arecibo, propiedad de Landfill. Se pactó una tarifa por unidad, no una cantidad global por un número indefinido de toneladas. Para ese servicio por unidad el Municipio separó **inicialmente** la cantidad de $55,438.58. Además, se comprometió a separar cualquier otra cantidad que fuera necesaria para pagar servicios adicionales.

La cantidad que Landfill intenta cobrar con su demanda corresponde a servicios que se prestaron entre agosto de 2004 y junio de 2005. Se trata de servicios que se prestaron durante la vigencia del contrato, que abarcó desde julio de 2004 hasta junio de 2005. El hecho de que la cantidad que

separó el Municipio de su presupuesto, según consta en el contrato, fuera insuficiente para costear el servicio que finalmente utilizó, no significa que se reclame el pago de una cantidad **adicional** a lo pactado o por un servicio prestado. Se exige el pago de lo pactado en el contrato, nada más. Lo que ocurre es que el costo final resultó en exceso de la cantidad inicialmente separada para cubrirlo.

Los $55,438.58 no representaban un tope ni el monto total del contrato. Fue una cantidad inicial que el municipio separó para pagar **el servicio**, y a la que debió sumar partidas adicionales conforme aumentara la necesidad por el acarreo de desperdicios sólidos al vertedero. El hecho de que el Municipio no separara partidas adicionales para costear el contrato, como se comprometió, no hace ilegal este negocio jurídico. Estamos ante un **contrato de servicios** que el legislador expresamente exceptuó de la regla general de que no puede pactarse el pago futuro de cantidades que excedan las asignaciones presupuestarias de un año, acorde con el Art. 8.004(b) de la Ley de Municipios Autónomos, supra. Tampoco lo hace inconstitucional a la luz del Art. VI, Sec. 10, de la Constitución de Puerto Rico, supra. Nótese que la falta por parte del Municipio de no separar partidas presupuestarias adicionales no implica necesariamente que se tenga que cargar el pago de los servicios utilizados a presupuestos futuros, pues muy bien el Municipio podía identificar partidas dentro del presupuesto del mismo año en que utilizó los servicios.

La asignación de partidas adicionales tampoco habría representado una enmienda al contrato, como plantea el Municipio en su alegato. En el contrato en controversia el Municipio se obligó a identificar las partidas con que pagaría a Landfill según hiciera uso del servicio. Aquí debemos recordar que los contratos para servicios de disposición de desperdicios sólidos pueden extenderse por cualquier término de duración.

Como dijimos en Johnson & Johnson v. Mun. de San Juan, pág. 857, el Art. 8.004(b), supra, exceptúa a los contratos de servicios, al igual que los de arrendamientos de muebles e inmuebles, de la prohibición de comprometerse al pago futuro de obligaciones que excedan las asignaciones y los fondos. No cabe duda de que el contrato entre Landfill y el Municipio de Lares era de servicios. La cláusula once del contrato objeto de la demanda de Lanfill lo denomina como tal. Además, la Ley de Municipios Autónomos es consistente en señalar la disposición de desperdicios sólidos como un servicio. Como ejemplo, el Art. 2.005, supra, así lo denomina. Así pues, el contrato entre Landfill y el Municipio cae entre las **excepciones** que establece la Ley de Municipios Autónomos, Art. 8.004(b), supra.

El Tribunal de Apelaciones determinó que esa cláusula atenta contra el interés público, pues permite a un alcalde comprometer las arcas municipales con un contrato que impacte presupuestos futuros en momentos en que ocurran cambios de administración. Sin embargo, al aprobar la Ley de Municipios Autónomos, la Asamblea Legislativa hizo un

análisis de cuál era el mejor interés público y concluyó que los contratos de servicios, junto con los de arrendamiento de muebles e inmuebles, debían exceptuarse del requisito. Esa determinación merece nuestra entera deferencia.

En el caso particular de los contratos de desperdicios sólidos, que se tratan de manera excepcional dentro de la Ley de Municipios Autónomos, la razón para la excepción es obvia. Se trata de un servicio esencial para la comunidad que amerita cierta flexibilidad en aras de procurar su continuidad. La interrupción del servicio podría perjudicar la salud pública. Recae en los funcionarios municipales utilizar sabiamente la excepción que concede el Art. 8.004(b) de la Ley de Municipios Autónomos, supra, en particular, en lo relativo a los desperdicios sólidos. El Art. 8.004(b), íd., no representa un cheque en blanco para otorgar contratos sin identificar los fondos para sufragarlos según la demanda del servicio contratado. Pero tampoco se puede imponer una camisa de fuerza que obligue a la interrupción de un servicio esencial como es el de disposición de desperdicios sólidos. Incluso, por ello la Ley de Municipios Autónomos, supra, permite que se contraten por cualquier término de duración.

B. En cuanto a la reconvención que presentó el Municipio de Lares, que nació del informe de la Oficina del Contralor, el foro apelativo intermedio ordenó a Landfill reembolsarle $390,043.64. Esa cifra surge de pagos que hizo el Municipio a Landfill por facturas de diciembre de 1999 a junio de 2000 y de febrero a junio de 2001. Según el Contralor, esas

facturas se pagaron con partidas presupuestarias de años posteriores al de la contratación. Además, fueron objeto del señalamiento del Contralor porque no se registraron esas obligaciones en los libros municipales.

Al abordar este reclamo nos confrontamos con el problema de que el expediente está huérfano de evidencia al respecto. El Municipio descansa su reclamo, principalmente, en el informe del Contralor de 30 de mayo de 2003, que incluye un señalamiento general sobre varios contratos del Municipio de Lares.[1] Ni siquiera consta en el expediente copia del contrato correspondiente a los años del señalamiento del Contralor, que según el Tribunal de Primera Instancia correspondía a facturas de diciembre de 1999 a junio de 2000 y de febrero a junio de 2001. Nótese que estas facturas son distintas y previas a las del contrato del cual se originó la demanda de Landfill, que data de julio de 2004. Ello dificulta nuestra función revisora.

De los alegatos de las partes podemos inferir que, al igual que el contrato objeto de la demanda de Landfill, la obligación de la cual se desprende la reconvención también

---

[1] En lo pertinente, el informe del Contralor M-03-51 indica:
**Hallazgo 2 – Pago de deudas y obligaciones incurridas ilegalmente**
a. De julio de 2000 a noviembre de 2001 se autorizó el pago de $713,142 por 47 deudas contraídas irregularmente en años fiscales anteriores con cargo a partidas presupuestarias de años posteriores. Al momento de incurrirse en dichas obligaciones éstas no se registraron en los libros del Municipio, por lo que no se obligaron los créditos correspondientes. De dicha cantidad la Legislatura Municipal, sin autoridad legal para ello, autorizó el pago de deudas por $396,344. Los restantes $316,798 fueron aprobados por el Alcalde y el Director de Finanzas.

se trataba de un contrato de servicios por acarreo de desperdicios sólidos al vertedero propiedad de Landfill. Si ese fuera el caso, el reembolso no procedería por las mismas razones que hoy validamos la demanda en cobro de dinero que presentó Landfill. En los contratos de servicios por disposición de desperdicios sólidos, pagar partidas con presupuestos de años posteriores no constituye una ilegalidad. Por lo tanto, ese señalamiento del Contralor es insuficiente para que declaremos nulo el contrato.

El otro señalamiento que hace el informe del Contralor es que no se registraron adecuadamente esas obligaciones en los libros del Municipio y, por consiguiente, no se obligaron los créditos correspondientes. El Municipio sustenta su reclamo en lo que decidimos en Mun. de Quebradillas v. Corp. Salud Lares, 180 D.P.R. 1003, 1004 (2011). En ese caso, señalamos que "[s]i el Municipio desembolsó dinero público incorrectamente mediante un acuerdo nulo, tiene derecho a recobrarlo". Sin embargo, ese caso se distingue del reclamo de reembolso que hace el Municipio de Lares en su reconvención. En Mun. de Quebradillas v. Corp. Salud Lares, supra, se determinó que el contrato que originó el desembolso era nulo porque se hizo verbalmente, lo que es inaceptable cuando se trata de contrato con municipios.

Hemos reiterado que los contratos con los municipios deben hacerse constar por escrito, hay que mantener un registro fiel de ellos para probar su existencia, y se remitirá copia a la Oficina del Contralor dentro de los 15

días de haberse otorgado el contrato. Ocasio v. Alcalde Mun. de Maunabo, supra, pág. 54. El incumplimiento con este último requisito no acarrea la nulidad de un contrato legalmente válido, aunque sí impide que se reclamen la prestación y contraprestación hasta tanto se registre adecuadamente.

En el caso de la reconvención del Municipio de Lares no estamos en posición de concluir que la obligación es nula. Como vimos, el señalamiento del Contralor de que se pagaron partidas con presupuestos de años posteriores no hace nulo un contrato de servicios. El hecho de que no registrara la obligación en los libros del Municipio es responsabilidad de este último. Ello, por sí solo, no hace nulo el contrato que el Municipio pagó. Tampoco contamos con una copia del contrato objeto de la reconvención, ni con una alegación sustentada por parte del Municipio de Lares, que nos lleve a concluir que la obligación fue ilegal.

Si el Municipio quiere reclamar el reembolso de los fondos, tiene que presentar prueba sobre alguna ilegalidad. No es suficiente el señalamiento del informe del Contralor. Bajo este panorama, no podemos ordenar el reembolso de los $390,043.64 objeto de la reconvención.

IV

Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones y reinstalamos la sentencia del Tribunal de Primera Instancia, Sala de Lares. El Municipio de Lares deberá pagar a Landfill Technologies of Arecibo Corp. la cantidad dispuesta por el foro primario. De igual

forma, dejamos sin efecto la orden para que Landfill Technologies of Arecibo Corp. reembolse al Municipio $390,043.64.


                              RAFAEL L. MARTÍNEZ TORRES
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Landfill Technologies of Arecibo, Corp.

    Peticionario

       v.

Gobierno Municipal de Lares, su Alcalde Hon. Roberto Pagán Centeno, Margarita Guzmán o Directora de Finanzas del Municipio de Lares

    Recurridos

CC-2012-0176

SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2013.

Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones y reinstalamos la sentencia del Tribunal de Primera Instancia, Sala de Lares. El Municipio de Lares deberá pagar a Landfill Technologies of Arecibo Corp. la cantidad dispuesta por el foro primario. De igual forma, dejamos sin efecto la orden para que Landfill Technologies of Arecibo Corp. reembolse al Municipio $390,043.64.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo